Dear Honorable Cleveland,
The Attorney General is in receipt of your request for an opinion wherein you ask, in effect, the following questions:
1. Does Senate Joint Resolution No. 9 apply to public institutionsof higher education in Oklahoma?
 2. If so, does Senate Joint Resolution No. 9 preclude fringe benefitsin addition to the seven percent pay increase permitted by theresolution?
The questions have reference to Senate Joint Resolution No. 9 of the First Regular Session of the Thirty-Seventh Legislature. A joint resolution properly enacted has the force and effect of a statute. Wright v. State, 192 Okla. 493, 137 P.2d 796 (1943). When determining the application of a law, primary consideration should be given to the plain ordinary meaning of the words. In Re: Certification of Question of State Law, 560 P.2d 195 (Okla. 1977); Ridley Packing Co. v. Holliday,467 P.2d 480 (Okla. 1970). The Legislature has employed in SJR9 language which leaves little room for confusion as to when it intended for the provision of the Resolution to apply.
 "Whereas, it is the intent of the Legislature that all pay increases of all employees within all agencies, departments, institutions, boards and commissions be within limits provided herein."
 Section 1. A. Effective July 1, 1979, on the first day of the pay period in which July 1, 1979, is included, all full-time officers and employees of the state shall be awarded a pay increase in conformity with the schedule in Section 13 of this resolution . . ." (Emphasis added)
No entity which operates as an element of state government nor any of its employees is excluded from the provisions of the Resolution. While some exemptions from the general policies of the Resolution are authorized, there is no aspect of state government which is not subject to the Resolution. In answer to your first question, state supported institutions of higher education are subject to all the provisions of Senate Resolution No. 9. In reference to your second question, state agencies are limited by SJR9 to an agency wide 7% "pay-rate increase". SJR9 does not specifically define "pay-rate increases". However, the Legislature incorporated substantial portions of part 705B-4(b) of Chapter VII, Federal Register, Volume 43, No. 250, December 28, 1978, which give substantive guidance as to what is meant by the term.
Part 705B-4(b) is a portion of the "Pay and Price Standards Implementation Guide" promulgated by the President of the United States in an effort to explain the voluntary wage and price guidelines to private employers. One of the express legislative intentions of SJR9 was to implement the same pay standards for state government as those advanced for the private sector by the President. SJR9 commences with the statement:
 "Whereas, the President of the United States, as an anti-inflationary measure, has asked that salary increases in all sectors of the economy not exceed seven percent (7%) during the next salary program year; and
 Whereas, it is determined that this request is a responsible one, worthy of full support by this Legislature, and that any state employee salary program will, on an agency, department, institution, board or commission basis, be within this seven percent (7%) increase restriction; . . ."
The explanations contained within part 705B-4(b) address the manner in which one would compute the impact of changes in the "Job Rate" of a given employee in an "employee group" so as to determine whether the 7% limit had been exceeded. The explanation is referenced only to each employee's hourly rate of pay, the percentile impact of an increase in the hourly job rate of pay and those kinds of hourly job rate pay increases which need not be considered in determining whether the 7% limit has been observed.
The Guide further states
 "The initial pay (job) rate and the terminal pay (job) rate is computed for each individual by dividing the total payroll salary/wages for that period by the total payroll hours for that same period . . ."
For example, an employee earning $1,000 for a one month payroll period of 160 hours would at the beginning of the pay program year have an initial pay (job) rate of $6.25 per hour. The guidelines discussed in part 705B-4(b) concern only fluctuations in this pay (job) rate over the pay program year. Nothing in part 705B4(b) suggest or even implies that fluctuations in fringe benefits supplemental to the payroll period pay (job) rate are a consideration in assessing compliance with the 7% agency pay rate increase ceiling. Since SJR9 intends to conform state pay increase policy to that expressed in the incorporated portions of part 705B-4(b) and since part 705B-4(b) does not concern itself with the impact of increased fringe benefits, SJR9 does not require that fringe benefits be considered when computing compliance with the 7% agency pay rate increase limit.
It is, therefore, the opinion of the Attorney General that Senate JointResolution No. 9 of the First Regular Session of the Thirty SeventhLegislature applies to all state agencies, institutions, boards andcommissions of whatever kind, including institutions of highereducation. Senate Joint Resolution No. 9 neither expressly nor impliedlyrequires the inclusion of increases in fringe benefits as a factor whencomputing compliance with the pay-rate increase ceilings mandated by theResolution.
JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA
JOHN F. PERCIVAL, ASSISTANT ATTORNEY GENERAL